# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:
05 10135MLW

| | |
|---|---|
| STEWARD F. GROSSMAN, | ) |
| AS ASSIGNEE OF | ) |
| PRIME POULTRY CORP. | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| YU & QUANG TRADING, INC., | ) |
| WU CHEN and YU CHEN | ) |
| Defendants, | ) |
| | ) |

## AMENDED COMPLAINT

### I.    JURISDICTION – APPLICABLE TO ALL COUNTS

Jurisdiction is based upon 28 U. S. C. §1332.  This matter is between citizens of different states and the amount in controversy is in excess of $75,000.00

### II.    THE PARTIES – APPLICABLE TO ALL COUNTS

1.    Steward F. Grossman, of Boston, Massachusetts, is the assignee of Prime Poultry Corporation pursuant to an **Assignment for the Benefit of Creditors of Prime Poultry Corporation** entered into between Prime Poultry Corporation and Steward F. Grossman on or about February 10, 2005..

2.    Yu & Quang Trading, Inc. (hereinafter referred to as "Yu & Quang") is a New York Corporation with a principal place of business at 282 Broome Street, New York, NY.

3.    Wu Chen is a resident of the State of New York and resides at 12 Monroe Street, Apartment HF3, New York, NY.  Wu Chen at all relevant times was the Manager and Chief Operating Officer of Yu & Quang.  He is also a Corporate Director of Yu & Quang.

4.    Yu Chen is a resident of the State of New York.  Yu Chen is the President, sole owner and Chief Executive Officer of Yu & Quang.

### III.    THE SCHEME- APPLICABLE TO ALL COUNTS

5.    Prime is a poultry wholesaler.  It purchases chicken, turkey and other products from

producers and larger wholesale suppliers and sells that product, primarily to Massachusetts based retail customers.

6.      Eric Talcofsky was the President of Prime in November of 2002. He was the son of Norman Talcofsky, the CEO of Prime, and Ruth Talcofsky and the brother of Susan Talcofsky Aguiar. Norman Talcofsky died on November 19, 2002.

7.      In November of 2002, after the death of Norman Talcofsky, the stock of Prime was owned as follows:

   a.          60% in trust for the benefit of Ruth Talcofsky, Norman's widow.
   b.          20% owned by Susan Talcofsky Aguiar
   c.          20% owned by Eric Talcofsky

8.      Yu & Quang is a poultry wholesaler located in New York City. It typically purchases chicken from chicken producers or large wholesalers and supplies it to retail customers in New York City.

9.      Because of a variety of market factors including the expense of doing business in New York City, Prime is typically able to pay less than Yu & Quang for the same product.

10.     In November of 2002, Eric Talcofsky and Wu Chen agreed that Eric would arrange to place two pallets of boneless chicken breasts (approximately 4000 lbs.) on each shipment going to Yu & Quang. Eric and Wu Chen agreed that the two pallets would not appear on the invoice from Prime or on the bill of lading for the shipment. Wu Chen, Yu Chen and Yu & Quang knew that Prime would not be paid for the boneless chicken breasts. Wu Chen agreed on behalf of Yu Chen and Yu & Quang that he would pay Eric Talcofsky in cash with the knowledge that the cash paid to Eric would not be received by Prime but would instead be used for the personal benefit of Eric Talcofsky.

11.     From November 2002, Eric Talcofsky arranged on an almost weekly basis to forward at least two pallets of boneless chicken breast to Yu & Quang. In each instance Eric Talcofsky and Yu & Quang agreed that the two pallets of boneless chicken breasts would not be listed on the Prime invoice or on the bill of lading and that Prime records would not show that the boneless chicken breast had been shipped from the inventory of Prime.

12.     Attached to this Complaint as Exhibit 1, and incorporated as if set out in full herein, is a list of the shipments of boneless chicken breasts videotaped to Yu & Quang that were being made by Eric Talcofsky from the inventory of Prime without payment being made to Prime and with cash payments being made to Eric Talcofsky. The loads on Exhibit 1 were videotaped by Prime's security cameras. Many additional loads are established based on the testimony of Prime employees. The total retail value of the product diverted from Prime by this scheme, as known by Prime at this point, is in excess of $350,000.

13.     On approximately January 2, 2003, Yu & Quang received a full truck load, 703 boxes of product, with a retail value of $60,000 from Prime. Yu & Quang did not pay Prime for

that product.  On information and belief Yu & Quang paid Eric Talcofsky cash for that product.

14.    Wu Chen, Yu Chen and Yu & Quang entered into a variety of other arrangements with Eric Talcofsky involving the delivery of property and inventory of Prime to Yu & Quang without payment being made to Prime.

15.    By July of 2003, Prime had discovered the scheme between Eric Talcofsky and Yu & Quang.  When Eric Talcofsky learned that the scheme had been uncovered he called Yu & Quang and explained to them that payment for the most recently shipped boneless chicken breasts needed to be made to Prime.  Mr. Talcofsky created an invoice in the amount of $32,000.00 and called Wu Chen to tell him that he was sending the invoice because the could not do cash business anymore.  The invoice was not a contemporaneous invoice but rather was an after the fact invoice designed to represent product shipped in June and July to Yu & Quang.

16.    Yu & Quang paid $32,000.00 represented by that invoice to Prime on August 26, 2003, which represented only the approximate cost of said product.

17.    At all relevant times, Yu Chen was directly supervising Wu Chen.  Yu Chen was aware of and approved the scheme whereby Prime's property was taken from Prime without payment to Prime.  Yu Chen was directly involved in arranging to have cash available to make payment to Prime.

18.    As part of the scheme, the Defendants Yu & Quang, Wu Chen and Yu Chen agreed with Eric Talcofsky that they would utilize interstate trucking companies who would agree not to produce legally required bills of lading showing the boneless chicken breasts, which was the property of Prime, and was being shipped to Yu & Quang.

## IV.    CLAIMS
### COUNT I – CONVERSION

21.    From on or about November 2002 through July of 2003, the Defendants Yu & Quang, Wu Chen and Yu Chen converted to their own use poultry product which was property of Prime in the value of approximately at least $350,000.

### COUNT II – DECEIT

22.    Beginning on or about November 2002 the Defendants Yu & Quang, Wu Chen and Yu Chen made representations to Prime that they wished to purchase poultry products from Prime at a market rate.

23.    The representations of the Defendant's Yu & Quang, Wu Chen and Yu Chen were false in that the Defendant's, in fact intended to induce employees and agents of Prime to deliver to them Prime's poultry products at a below market rate.  The Defendants knew that Prime would not be paid for the product and that instead they would pay the agents and/or employees of Prime directly in cash which they knew the agents and/or employees

would use for their own benefit.

24.    Beginning in November 2002, the Defendants Yu & Quang, Wu Chen and Yu Chen knowingly received non invoiced poultry products as described above and paid cash to the agents and/or employees of Prime knowing that Prime would not receive any payment for the product received by the Defendants.

25.    The Defendants Yu & Quang, Wu Chen and Yu Chen acted with the knowledge and intent to deceive the Plaintiffs and to induce the Plaintiffs to do business with them so that the scheme, as set out above, could be carried out.

26.    As a result of the scheme as outlined above, Prime was deprived of lost revenue for poultry products valuing in excess of $350,000.

### COUNT III – GOODS SOLD AND DELIVERED

27. The Defendants Yu & Quang, Wu Chen and Yu Chen owe the Plaintiff well over $350,000 for goods sold and delivered by the Plaintiff to the defendant between November 2002 and July 2003.

### COUNT IV – CIVIL CONSPIRACY

28. The Defendant's Yu & Quang, Wu Chen and Yu Chen combined and conspired with Eric Talcofsky for the unlawful purpose of converting the property of Prime by the unlawful and improper means.

29. The Defendant's Yu & Quang, Wu Chen and Yu Chen were able to carry out their scheme to deprive Prime of its property because of the peculiar power available to Eric Talcofsky as agents and/or employees of Prime.

30. As a result of the conspiracy entered into between the Defendants Yu & Quang, Wu Chen and Yu Chen and Eric Talcofsky, Prime suffered damages due to loss of its property in excess of $ 350,000.

### COUNT V – M. G. L. C. 93A

31. Prime, Yu & Quang, Wu Chen and Yu Chen are all parties who engage in the conduct of trade or commerce in the Commonwealth of Massachusetts.

32.    The conduct of Yu & Quang, Wu Chen and Yu Chen, as outlined in paragraphs 1 through 30 above, constitute unfair and deceptive trade practices and unfair competition.

33.    Prime has suffered a loss of money and property as a result of the unfair competition and unfair and deceptive trade practices of Yu & Quang, Wu Chen and Yu Chen.

34.    Yu & Quang, Wu Chen & Yu Chen acted willfully and knowingly when they committed the unfair and deceptive practices and unfair competition.

WHEREFORE:  The Plaintiff moves this Court to:

1.     Award judgment in an amount  which fairly and fully compensates the Plaintiff plus costs and interest.

2.     Award to the Plaintiff treble damages pursuant to M. G. L. c. 93A §11.

3.     Award to the Plaintiff attorney's fees pursuant to M. G. L. c. 93A §11.

Respectfully submitted,
By my attorney,


/s/ Michael W. Reilly, Esq.


Michael W. Reilly, Esq.
Tommasino & Tommasino
2 Center Plaza
Boston, MA   02108
(617) 723-1720
MA BBO# 415900

JURY DEMAND:  Now comes the Plaintiff and demands a jury trial on all counts.


/s/ Michael W. Reilly, Esq.

Michael W. Reilly, Esq.