UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEWARD F. GROSSMAN, as Assignee for the Benefit of Creditors of, PRIME POULTRY CORP., <br><br>   Plaintiff, <br><br> vs. <br><br> YU & QUIANG TRADING, INC., WU CHEN and YU CHEN, <br><br>   Defendants. | CASE NO. 05-10135-MLW |

**DEFENDANTS' MOTION TO COMPEL
USE OF VIDEOTAPE EQUIPMENT,
MOTION FOR PROTECTIVE ORDER
and
<u>MEMORANDUM IN SUPPORT THEREOF</u>**

Now come the Defendants Yu & Quiang Trading, Inc., Wu Chen and Yu Chen (collective, "Y&Q") and respectfully move for an order compelling the Plaintiff to allow them to use the videotape equipment at 24 Chesterton Street, Boston, MA (the "Premises") to view approximately 70 videotapes currently in the possession of the Plaintiff. Further, Y&Q respectfully moves for a protective order restricting the depositions of Wu Chen and Yu Chen from proceeding until they, through counsel, have had an opportunity to review the videotapes. As grounds for these motions, Y&Q states as follows.

A.   *Motion to Compel.*

In their Request for Production of Documents, which were served upon the Plaintiff on

or about January 4, 2006, Y&Q requested, amongst other things, "Copies of every videotape or other surveillance that purports to show Purported Missing Product being loaded onto trucks or shipped from Prime Poultry." In his response, which was served upon Y&Q on or about March 21, 2006, the Plaintiff stated, "Tapes are available for inspection upon reasonable notice to Plaintiff's counsel."

Around the same time, on or about March 3, 2006, Y&Q's counsel met with Plaintiff's counsel and John Aguiar, a former employee of Prime Poultry, at the Premises to review a sampling of the videotapes. The videotapes purport to show Prime Poultry employees loading hundreds of boxes of poultry onto trucks destined for Y&Q, with each load containing boxes that allegedly were not included on the Prime Poultry invoices. John Aguiar explained to Y&Q's counsel and Plaintiff's counsel how to count the total number of boxes per truckload. Supposedly after counting each box on each truck, John Aguiar compared that number with the number of boxes listed on each Prime Poultry invoice. Plaintiff bases his damages upon the alleged discrepancy between the number of boxes purportedly loaded on each truck and the number of boxes invoiced to Y&Q. If ever there were a smoking gun, the videotapes allegedly are it.

Each videotape captures a 24 hour timeframe. According to Plaintiff, there are approximately 70 videotapes. Thus, Plaintiff alleges that on approximately 70 days, there was uninvoiced product shipped to Y&Q which is shown on the videotapes.

Y&Q, through counsel, seeks to review the approximate 70 videotapes in their entirety with Eric Talcofsky, a former Prime Poultry employee. Y&Q has reason to believe that there are not 70 videotapes as Plaintiff states, and regardless of the number of videotapes, Y&Q's

counsel is not qualified to review the videotapes himself and determine how many boxes of poultry were loaded onto each truck.

When Y&Q's counsel explained to Plaintiff's counsel the need to review the videotapes with Eric Talcofsky, Plaintiff's counsel stated that he could not get authorization to allow Mr. Talcofsky into the Premises, as there is a family dispute between Mr. Talcofsky and his sister and brother-in-law, Susan Talcofsky Aguiar and John Aguiar, who appear to control access to the Premises. However, Plaintiff's counsel agreed to make the videotapes available for viewing at another facility.

Since then, Y&Q, through counsel, has sought another facility at which counsel and Mr. Talcofsky could review the videotapes. The facilities at which counsel inquired, including High Speed Video / Video Transfer, advised that they do not have the equipment to view the videotapes. One facility, The Duplicating Center, thought it might have equipment that would accommodate the videotapes. However, after that facility ran one sample videotape (that Y&Q received from Plaintiff, via counsel), it advised that the equipment upon which the videotapes were made is too specialized.

Accordingly, Y&Q is advancing this motion. After diligent search, Y&Q is unable to locate any facility at which counsel and Mr. Talcofsky can review the 70 videotapes. Review of those videotapes is crucial to Y&Q's defense, as those videotapes purport to show direct proof of uninvoiced product being shipped to Y&Q.

B.   *Motion for Protective Order*.

In light of the importance of the videotapes, Wu Chen and Yu Chen, employees of Yu & Quiang, should not have to be subjected to depositions until they, through counsel, have

DPR/33028/2/576248v1
06/06/06-BOS/

reviewed the videotapes. The substance of the videotapes directly impacts how this case is defended.

Currently, Wu Chen's deposition and Yu Chen's deposition are scheduled for June 20, 2006 and June 21, 2006, respectively. While the depositions were originally noticed on or about March 22, 2006, they have been continued because of scheduling conflicts. Further, since before the depositions were noticed, Y&Q, through counsel, has been trying to review the videotapes.

Wu Chen and Yu Chen are ready, willing and able to submit to their depositions. However, they simply deserve the benefit of their counsel reviewing the Plaintiff's purported "smoking gun," for which Y&Q has been asking for months, before being deposed.

No party will be prejudiced by the granting of these motions. However, Y&Q will be prejudiced should they be denied. As further grounds for these motions, Y&Q relies and incorporates herein the Affidavit of David P. Russman. Fed. R. Civ. P. 10(c).

**Wherefore**, Yu & Quiang Trading Inc., Wu Chen, and Yu Chen respectfully request that this Honorable Court grant their *Motion to Compel Use of Videotape Equipment* and *Motion for Protective Order*.

YU & QUIANG TRADING, INC.

WU CHEN and YU CHEN,

By their attorneys,

/s/ David P. Russman

David P. Russman (BBO# 567796)
Pepe & Hazard LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
Tel: 617-748-5500

## Certification

I, David P. Russman, hereby certify that on June 6, 2006, I conferred with Plaintiff's counsel in a good faith attempt to resolve or narrow the issues presented in this Motion. The conference was unsuccessful.

/s/ David P. Russman

David P. Russman

## Certificate of Service

I hereby certify that I have today served the above motion upon counsel for the opposing party by electronic means.

/s/ David P. Russman

David P. Russman

DPR/33028/2/576248v1
06/06/06-BOS/

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| STEWARD F. GROSSMAN, as Assignee for the Benefit of Creditors of, PRIME POULTRY CORP., <br><br> Plaintiff, <br><br> vs. <br><br> YU & QUIANG TRADING, INC., WU CHEN and YU CHEN, <br><br> Defendants. | CASE NO. 05-10135-MLW |

**AFFIDAVIT OF DAVID P. RUSSMAN**

I, David P. Russman, do hereby depose and state as follows:

1. I am counsel of record for the Defendants in this case, and I make this Affidavit upon my own personal knowledge. I am submitting this Affidavit in support of *Defendants' Motion to Compel Use of Videotape Equipment* and *Motion for Protective Order*.

2. It is crucial to the defense of this case that the Defendants have the opportunity to review the surveillance videotapes that purport to show uninvoiced poultry being loaded onto trucks destined for Yu & Quiang Trading, Inc.

3. When Plaintiff's counsel advised that he could not obtain authorization for Eric Talcofsky to enter the premises at 24 Chesterton Street, Boston, MA to review the videotapes with me, I, and others at my firm, contacted various facilities in an effort to find one at which Mr. Talcofsky and I could review the videotapes. None of the facilities was able to accommodate our request.

Signed under the pains and penalties of perjury this 6th day of June, 2006.

/s/ David P. Russman

_____
David P. Russman